## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| HECTOR TOPETE, | |
| Plaintiffs, | |
| vs. | CIV. ACTION NO._____ |
| COMMERCIAL FURNITURE SERVICES, LLC; JIM MCMENIMEN; and CRAIG GOOKIN, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Hector Topete, by and through the undersigned Counsel of Record, and hereby files this Complaint for Damages against Defendants Commercial Furniture Services, LLC, Jim McMenimen, and Craig Gookin (*collectively*, "Defendants"), respectfully showing the Court as follows:

# I.  JURISDICTION AND VENUE

1.

Plaintiff brings the above-captioned case pursuant to:  (a) 29 U.S.C. §§ 201, *et seq.,* the Fair Labor Standards Act of 1938, as amended, ("FLSA") for unpaid overtime wages and retaliation; (b) the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981") for race and national origin discrimination; and (c) laws of the State of Georgia for intentional infliction of emotional distress, as well as negligent retention and supervision.

2.

The United States District Court for the Northern District of Georgia ("Court") is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 because the above-captioned complaint involves the laws of the United States and with supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the State law claims arise from the same nucleus of operative facts as the Federal law claims.

3.

Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants reside and/or maintain a place of business in the Northern District of Georgia, Atlanta Division, and the unlawful conduct forming the basis of the above-captioned complaint occurred in the Northern District of Georgia, Atlanta Division.

## II. PARTIES

4.

Plaintiff Hector Topete ("Topete") is a fifty-seven (57) year old Mexican-American male, who is a citizen of the United States, resident of the State of Georgia, subject to this Court's jurisdiction, and entitled to bring the claims asserted in the above-captioned case.

5.

At all relevant times, Topete was an "employee" of Defendant Commercial Furniture Services, LLC, within the meaning of, among other laws, the FLSA, 29 U.S.C. § 203.

6.

Defendant Commercial Furniture Services, LLC, ("Commercial Furniture") is a foreign limited liability company providing office furniture installation, asset management, and logistical services affecting inter-state commerce through its facilities in Georgia and Tennessee and subject to the Court's jurisdiction with a principal office located in Knoxville, Tennessee.

7.

Commercial Furniture operates a facility located at 6376 Corley Road, Suite A, Peachtree Corners, Georgia 30071 ("Peachtree Corners Location"), where the conduct forming the basis of the above-captioned complaint occurred.

8.

Commercial Furniture is an "employer" with the meaning of, among other laws, the FLSA, 29 U.S.C. § 203, with more than twenty (20) employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year while engaging in inter-state commerce.

9.

Commercial Furniture may be served with process through Cynthia Jenkins, Registered Agent, 6376 Corley Road, Suite A, Peachtree Corners, Georgia 30071.

10.

Defendant Jim McMenimen ("McMenimen") is and was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

11.

McMenimen is and was, at all relevant times, Commercial Furniture's Owner and Managing Member, involved in the day-to-day operation of Commercial Furniture and regularly exercised authority to: (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of Commercial Furniture.

12.

At all relevant times, McMenimen supervised Topete and participated in the unlawful and tortious conduct described herein.

13.

McMenimen may be served with process at Commercial Furniture's Peachtree Corners Location located at 6376 Corley Road, Suite A, Peachtree Corners, Georgia 30071.

14.

Defendant Craig Gookin ("Gookin") is and was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

15.

Gookin is and was, at all relevant times, Commercial Furniture's Georgia Field Operations Manager, involved in the day-to-day operation of Commercial Furniture's Peachtree Corners Location, and regularly exercised authority to: (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of Commercial Furniture.

16.

At all relevant times, Gookin supervised Topete and participated in the unlawful and tortious conduct described herein.

17.

Gookin may be served with process at Commercial Furniture's Peachtree Corners Location located at 6376 Corley Road, Suite A, Peachtree Corners, Georgia 30071.

### III.  FACTUAL ALLEGATIONS

18.

Commercial Furniture provides office furniture installation, asset management, and other logistical services related to the onsite creation of workspaces in the Southeast United States from the Peachtree Corners Location.

19.

Beginning in or about August 2018, Topete began working for Commercial Furniture as a Commercial Installer earning $18.24 per hour.  Unbeknownst to Topete, Commercial Furniture often paid newly-hired, non-Mexican-American Commercial Installers higher hourly rates.  For example, when Marcus Arnold ("Arnold")—African-American—began working for Commercial Furniture as a Commercial Installer in or about April 2019, Commercial Furniture paid Arnold $19.50 per hour.

20.

When commencing employment with Commercial Furniture, Topete inquired about overtime hours and compensation, however, Gookin and others responded that Commercial Furniture only paid straight hours, no time-and-a-half for overtime hours.

21.

As a Commercial Installer, Topete was responsible for the efficient installation and assembly of office furniture and workspaces at Commercial Furniture's client facilities throughout the region.

22.

During the course of employment with Commercial Furniture, Topete diligently and professionally performed all duties and assigned tasks.

23.

While employed by Commercial Furniture, Topete's work schedule varied on a daily basis depending on the needs of Commercial Furniture's clients.  In the evenings no earlier than 6:00PM, but often much later into the night, Gookin would send Commercial Installers an e-mail with the work schedule for the next day. However, because Commercial Furniture provides onsite services to clients, Topete and other Installers were often required to work out-of-town with little or no prior notice.  When travelling to out-of-town to worksites, Defendants required Topete and the other Installers to arrive at the Peachtree Corners Location or the specified worksite at approximately 5:00AM the following day—often only hours after receiving e-mail notice of the need to travel.  Simply put, Topete's work schedule varied on a daily basis with little advance notice.

24.

Although the hours worked by Commercial Furniture employees were initially recorded on timesheets, during the course of Coleman's employment, Commercial Furniture began requiring employees to clock-in and clock-out using an electronic system, including an ADP human resources and management system.

25.

Although Topete worked, on average, in excess of sixty (60) hours per week, Commercial Furniture refuses and/or fails to pay Topete overtime at the FLSA-mandated rate for hours worked over forty (40) in a given workweek.

26.

Because Commercial Furniture fails and refuses to compensate at the FLSA-mandated rate, Topete and other Commercial Installers complained to Gookin and other Commercial Furniture employees. On several occasions, Arnold complained to Gookin about Commercial Furniture's failure to compensate at the FLSA-mandated rate. Although Gookin often responded to Arnold's complaints by stated, "We're working on it," Commercial Furniture never compensated Commercial Furniture Installers, including, but not limited to, Topete, at the FLSA-mandated rate for hours worked in excess to forty (40) hours in certain workweeks. Moreover, in

response to one of Arnold's complaints about the failure to compensate at the FLSA-mandated rate in or about May 2020, Gookin responded, "If you don't like it, leave."

27.

Similarly, while at the warehouse and at worksites, Topete discussed the lack of time-and-a-half for hour worked in excess of forty (40) hours in a given workweek with co-workers and colleagues. Although present during many of these discussions, Gookin and McMenimen never acknowledged or addressed these concerns, complaints, and discussions. Rather, Defendants continued to compensate Topete at the regular hourly rate for hours worked in excess of forty (40) hours in given workweeks.

28.

Due to Defendants' erratic and draconian scheduling practices and procedures, Topete suffered extreme and severe distress as it has become increasingly difficult for Topete to continue performing diligently and professionally while maintaining his personal and familial obligations.

29.

Although generally scheduled to work eight (8) hours per day Monday through Friday, whenever a project was not completed by the close of business, Defendants required Topete and other Commercial Installers to continue working

until the project was complete.  Often, Topete is required to work late into the evenings which adversely impacts Topete's personal and family life.  Whenever Commercial Installers complain about being forced to work overtime without compensation in compliance with the FLSA, McMenimen has threatened to suspend and/or give "days off."  Defendants repeatedly threatened Commercial Installers with reprimands, suspensions, and/or termination whenever they express concerns or complain about unlawful employment practices.

30.

Whenever Topete and other Commercial Installers professionally complained about scheduling or unpaid wages, Gookin created a tense and stressful workplace environment.  For example, Gookin would shut down, cease communicating with any complaining Commercial Installer, and isolate/separate the complaining Commercial Installer for weeks.  Even worse, Gookin would summarily and punitively remove complaining Commercial Installers from Commercial Furniture's work schedule, resulting in the loss of income.

31.

Commercial Furniture has an account with United Parcel Service ("UPS"), requiring the maintenance of Installers at UPS facilities.  In 2019 while invoicing/billing UPS at the FLSA-mandated rate for hours worked in excess of forty

(40) hours during workweeks by the Installers, Warren and Greg, Commercial Furniture failed to compensate the Installers at the FLSA-mandated rate. After learning of the failure to compensate the Installers at the FLSA-mandated rate, UPS threatened to, among other things, terminate the account before Commercial Furniture agreed to take remedial action, including, but not limited to, back-pay at the FLSA-mandated rate to the Installers. Angered, Gookin and McMenimen cursed at the Installers for disclosing the unlawful employment practices.

32.

On or about January 17, 2020, Arnold contacted an attorney to discuss legal remedies associated with Defendants' failure to pay FLSA-mandated overtime wages, the extreme/severe stress caused by Defendants' scheduling practices, and Defendants' unlawful and unfair employment practices. Following communication with legal counsel, Arnold gave legal counsel's contact information co-workers, including, but not limited to, Victor L. Coleman ("Coleman"). Approximately three (3) weeks later, Defendants removed Arnold from the work schedule and, since that time, Defendants have not scheduled Arnold to work as a Commercial Installer.

33.

Experiencing the same issues as Topete, Arnold, Coleman, and Derick Freeman (another Commercial Installer), commenced an FLSA suit against Defendants, Arnold, *et al.* v. Commercial Furniture Services, LLC, *et al.*, Civ. Action No. 1:20-cv-03252 (N.D. Ga. Aug. 5, 2020) ("Prior Litigation"), which resulted in the Court approving the FLSA settlement agreement.

34.

After engaging an attorney related to the Prior Litigation, Coleman gave legal counsel's contact information to other Commercial Installers, including Topete. Armed with the knowledge of Defendants' unlawful employment actions, Topete and other Commercial Installers continued to discuss and express concerns related to Defendants' failure and refusal to compensate employees at the FLSA-mandated rate.   In response, Defendants threatened to terminate the employment of Commercial Installers, including Topete, who discussed compensation.  On at least one occasion, Gookin stated, "If you don't like it, go to another company."

35.

During the Prior Litigation in March 2021, Defendants denied Commercial Installers, including Topete, access to the ADP human resources and management system containing earnings and income statements and, thus, Defendants continue to conceal Defendants' known FLSA violations.

36.

While Topete worked as a Commercial Installer, Commercial Furniture required, and was aware that, Topete worked more than forty (40) hours per workweek.

37.

Rather than compensate Topete at the FLSA-mandated rate for hours worked in excess of forty (40) hours in each workweek, Commercial Furniture compensated Topete at his regular straight-time rates for hours worked in excess of forty (40) ours in each workweek.

38.

Commercial Furniture's failure to properly compensate Topete at the FLSA-mandated rate was knowing and willful.

## IV.  CLAIMS FOR RELIEF

### COUNT I:
### FAILURE TO PAY MANDATED WAGES
### IN VIOLATION OF THE FLSA
**(Against Defendant Commercial Furniture)**

39.

The FLSA requires, with certain exceptions that are inapplicable to the above-captioned case, that employers pay their employees time and a half for hours an employee works in excess of a 40-hour workweek.

40.

During the relevant period, Topete was an employee of Commercial Furniture within the meaning of the FLSA, 29 U.S.C. § 203.

41.

During the relevant period, the relationship between Topete and Commercial Furniture was an employer-employee relationship within the meaning of the FLSA, such that a cause of action exists based upon the failure to pay FLSA-mandated rates for hours worked in excess of forty (40) hours during workweeks.

42.

During the relevant time period, Topete regularly worked more than forty (40) hours per workweek and, therefore, Topete entitled to be paid one-and one-half times the regular rate of pay for all hours worked over forty (40) hours in the applicable workweeks.

43.

However, during the course of Topete's employment, Commercial Furniture failed to compensate Coleman for the hours worked in excess of forty (40) hours per workweek.

44.

Commercial Furniture knew, or showed reckless disregard for the fact, that Commercial Furniture failed to pay Topete overtime compensation in violation of the FLSA.

45.

Commercial Furniture's actions, policies, and/or practices described herein violate the FLSA, 29 U.S.C. § 207, by regularly and repeatedly failing to compensate Topete at the mandated overtime rate.

46.

Commercial Furniture's conduct in violation of the FLSA was both willful and in bad faith.

47.

As the direct and proximate result of Commercial Furniture's intentional, willful, and unlawful conduct when refusing to pay Topete overtime compensation for the overtime hours worked, Topete has suffered loss of income and other damages.

48.

Pursuant to the FLSA, 29 U.S.C. § 216, Topete is entitled to unpaid overtime wages, liquidated damages, and reasonable attorneys' fees, and costs incurred in connection with this claim.

## COUNT II:
## RACE AND NATIONAL ORIGIN DISCRIMINATION
## IN VIOLATION OF SECTION 1981
### (Against All Defendants)

49.

Section 1981 prohibits employers from discriminating against employees because of race and/or national origin.

50.

Defendants violated Section 1981, such that a cause of action exists where discrimination on the basis of race and/or national origin was the causative agent of adverse actions directed at Topete by Defendants.

51.

As a Mexican-American male, Topete is a member of a protected class under Section 1981.

52.

At all times relevant to this action, Topete was qualified for his positions and diligently performed as a Commercial Installer while employed by Commercial Furniture.

53.

Furthermore, Topete's skill, experience, and performance were at least on par with other non-Mexican-American, similarly-situated Commercial Furniture employees.

54.

At all times relevant to this action, the relationship between Topete and Commercial Furniture was a relationship of "employee" to "employer," such that a cause of action exists where discrimination on the basis of race is alleged to be the cause of an adverse action directed to the employee by the employer.

55.

At all times relevant, Commercial Furniture acted by and through its agents and employees, including, but not limited to, Gookin and McMenimen, each of whom acted in the course and scope of their employment with and for Commercial Furniture.

56.

Despite Topete's diligent work performance, Defendants intentionally discriminated against Topete on the basis of his race and/or national origin by, among other things, subjecting Topete to unfair treatment compared to similarly-situated non-Mexican-American employees and paying Topete at a lower hourly rate than other, non-Mexican-American Commercial Installers, including, but not limited to, Arnold, based on race and/or national origin.

57.

Consequently, Topete was treated less-favorably than similarly-situated non-Mexican-American Commercial Furniture employees in violation of Section 1981.

58.

Defendants' conduct adversely impacted the terms, conditions, and privileges of Topete's employment.

59.

Defendants' actions constitute unlawful race and/or national origin discrimination in violation of Section 1981.

60.

Defendants have willfully and wantonly disregarded Plaintiff's statutory rights and Defendants' discrimination was undertaken in bad faith.

61.

As a direct and proximate result of Defendants' unlawful employment practices, which were intended to cause Topete harm and/or were committed with reckless disregard of the harm caused to Topete, in derogation of Topete's Federally-protected rights, Topete has suffered and continues to suffer the indignity of race and national origin discrimination, the invasion of his right to be free from race and national origin discrimination, humiliation, emotional pain, mental distress, inconveniences and mental anguish.

62.

Defendants' intentional and illegal conduct entitles Topete to compensatory damages, as well as any and all other remedies available under Section 1981.

63.

Defendants' actions with regard to Topete demonstrate willful misconduct, malice, fraud, wantonness, oppression, and a complete lack of care entitling Topete to an aware of punitive damages to deter, punish, and penalize Commercial Furniture for and from similar future conduct.

## COUNT III
## RETALIATION
## IN VIOLATION OF THE FLSA
**(Against All Defendants)**

64.

The FLSA prohibits employers from retaliating against an employee who opposes an employment practice prohibited by, or exercises or attempts to exercise rights under, the FLSA.

65.

During the relevant period, the relationship between Topete and Commercial Furniture was an employer-employee relationship within the meaning of the FLSA, such that a cause of action exists where retaliation on the basis of opposing and/or reporting unlawful employment practices is alleged to be the causative agent of adverse employment actions directed to Topete by Defendants.

66.

Defendants unlawfully and knowingly failed to pay the FLSA-mandated rates to Topete for hours worked in excess of forty (40) hours during certain workweeks.

67.

Topete and other Commercial Installers repeatedly expressed concern and complained to Commercial Furniture employees, including, but not limited to, Gookin, about unlawful employment practices in violation of the FLSA.

68.

When Defendants failed to remedy the complaints about, *inter alia*, the failure to compensate pursuant to the FLSA, Topete communicated with other Commercial Installers, and sought legal representation, to remedy the FLSA violations.

69.

Following complaints concerning unlawful employment practices, as well as communications with other Commercial Installers concerning FLSA remedies, Defendants took adverse employment actions against Topete, including, but not limited to, ceasing professional communications, isolating Topete from colleagues and co-workers, reducing compensation/hours, denied access to employment records, and threatening to terminate employment.

70.

The effect of Defendants' actions has been to suspend and deprive Topete of an employment position, as well as loss income in the form of wages, prospective retirement benefits, social security, and other benefits due Topete because of the exercise of Topete's Federally-protected rights

71.

Defendants' adverse employment actions against Topete constitute unlawful retaliation in violation of, *inter alia*, the FLSA.

72.

Defendants' retaliatory actions were willful, deliberate, and intended to cause Topete harm and/or were committed with reckless and wanton disregard of the harm caused to Topete in derogation of Topete's Federally-protected rights.

73.

Defendants' discriminatory and retaliatory actions were undertaken in bad faith.

74.

The retaliation to which Topete was subjected by Defendants entitles Topete to all appropriate relief afforded under the law.

75.

As a result of Defendants' intentional and unlawful conduct, Topete has suffered lost compensation and other benefits of employment, physical and emotional distress, inconvenience, humiliation, damage to reputation, other indignities, as well as past and future pecuniary losses.

76.

Defendants' actions with respect to Topete have demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care and, thus, Topete is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

## COUNT IV:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA
### (Against All Defendants)

77.

Defendants' statements, conduct, and behavior towards Topete were intentional and reckless, extreme and outrageous, causing Topete severe shame, humiliation, embarrassment, and emotional distress of a nature that no person should endure.

78.

Defendants' statements, conduct, and behavior towards Topete demonstrate, among other things, a "retaliatory animus."

79.

At all relevant times, the Parties had a special, employer-employee relationship, wherein Defendants had control over Topete, as well as Topete's income and/or livelihood during a Global Pandemic.

80.

When engaging in the intentional, reckless, extreme, and outrageous conduct towards Topete, Defendants knew that Topete was dependent upon the income received from Commercial Furniture.

81.

Defendants engaged in erratic and draconian scheduling practices that were known to cause severe distress, ignored Topete's reasonable requests for relief, threatened to terminate employment, and engaged in other unfair and unlawful treatment.

82.

Defendants knew or should have known that such conduct would result in the severe emotional distress suffered by Topete.

83.

As a result of Defendants' conduct, Topete has and will continue to suffer severe emotional distress and other damages for which Topete is entitled to recover.

**COUNT V**
**NEGLIGENT RETENTION AND SUPERVISION**
**IN VIOLATION OF THE LAW OF THE STATE OF GEORGIA**
**(Against Defendants Commercial Furniture and McMenimen)**

84.

As a result of the actions taken by Defendants Commercial Furniture and McMenimen, Topete suffered, among other things, unpaid wages, retaliation, and severe emotional distress.

85.

Defendants Commercial Furniture and McMenimen owed Topete a duty to hire, retain, and supervise employees who would lawfully conduct themselves and not engage in unlawful or tortious conduct.

86.

By negligently retaining and supervising its employees, including Gookin, Defendants Commercial Furniture and McMenimen breached their duty to hire, retain, and supervise employees who would lawfully behave.

87.

Defendants Commercial Furniture and McMenimen knew or, in the exercise of ordinary diligence, should have known of the propensity of its employees, including Gookin, to engage in unlawful conduct against Topete.

88.

By failing to engage in any corrective or remedial action, Defendants Commercial Furniture and McMenimen ratified, condoned, and/or adopted its employees' unlawful conduct.

89.

As a direct and proximate result of Defendants Commercial Furniture's and McMenimen's negligent retention and supervision of its employees, as well as the failure to take any remedial or corrective action with respect to the known unlawful actions taken by employees, including Gookin, Topete suffered damages.

90.

Defendants Commercial Furniture's and McMenimen's negligent conduct entitles Topete to compensatory damages, punitive damages, as well as any and all other remedies available under the law.

## **PRAYERS FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully demand a trial by jury and request the following relief:

(a)     That the Clerk of the Court issue summons and original process, served upon Defendants and any other person or entity the Court deems necessary in accordance with the law;

(b)     That the Court grant declaratory judgment that Plaintiff's rights under, among other laws, the FLSA and Section 1981 were violated;

(c)     That the Court award Plaintiff compensatory damages for all injuries suffered as a result of Defendants' unlawful conduct;

(d)     That the Court award back pay, including, but not limited to, unpaid back wages, lost income, bonuses, incentive compensation, pension, social security, and other benefits in amounts to be shown at trial;

(e)     That the Court award liquidated damages equal to back pay and lost benefits based upon Defendants' willful violations of the FLSA;

(g)     That the Court award punitive damages in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter such future conduct;

(h)    That the Court award pre-judgment interest on any monetary award;

(i)    That the Court grant a trial by jury as to all triable issues of fact; and

(j)    Further and additional relief as may be just and appropriate.

Respectfully submitted, this 23rd day of September, 2021.

MOLDEN & ASSOCIATES

*/s/ Regina S. Molden*
REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com

*Counsel for Plaintiff Hector Topete*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| HECTOR TOPETE, | |
| Plaintiffs, | |
| vs. | CIV. ACTION NO._____ |
| COMMERCIAL FURNITURE SERVICES, LLC;<br>JIM MCMENIMEN; and<br>CRAIG GOOKIN, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## LOCAL RULE AND SERVICE CERTIFICATION

The undersigned counsel certifies that this document has been prepared in accordance with the Local Rules and that the foregoing Complaint for Damages has been filed with the Clerk using the CM/ECF system which will notify the attorney(s) of record.

Respectfully submitted, this 23rd day of September, 2021.

MOLDEN & ASSOCIATES

 */s/ T. Orlando Pearson*

T. ORLANDO PEARSON
Georgia Bar No. 180406